| | |
|---|---|
| Erik A. Christiansen, USB #7372<br>**PARSONS BEHLE & LATIMER**<br>201 South Main Street, Suite 1800<br>Salt Lake City, Utah 84111<br>Telephone:  801.532.1234<br>Facsimile:  801.536.6111<br>EChristiansen@parsonsbehle.com<br>ecf@parsonsbehle.com | Christopher Robertson (*pro hac vice*)<br>**SEYFARTH SHAW LLP**<br>Seaport East<br>Two Seaport Lane, Suite 1200<br>Boston, MA 02210-2028<br>Telephone: 617-946-4989<br>Facsimile: 617-790-6774<br>crobertson@seyfarth.com |

*Attorneys for Plaintiff PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TREVOR R. MILTON, M&M RESIDUAL, LLC and T&M RESIDUAL, LLC,<br><br>Defendants. | **MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**<br><br>Case No. 2:22-cv-00166<br><br>Judge: Hon. Howard C. Nielson, Jr<br><br>Magistrate Judge: Hon. Daphne A. Oberg |

**TABLE OF CONTENTS**

INTRODUCTION AND RELIEF REQUESTED ................................................................... 3

BACKGROUND .................................................................................................................... 4

STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................... 4

ARGUMENT ........................................................................................................................ 11

I.     Collateral Estoppel Bars Defendant From Relitigating Issues That Were Conclusively Established in the Criminal Case ................................................................. 12

    a.    The Issues in the Criminal Case and This Case Are Identical ........................................ 13

    b.    Milton's Fraud Was Decided in a Final Judgment on the Merits ................................... 16

    c.    Milton Fully and Fairly Litigated the Issues in the Criminal Case ................................. 17

    d.    Milton Was a Party to Both Actions ............................................................................... 18

CONCLUSION ..................................................................................................................... 19

CERTIFICATE OF COMPLIANCE .................................................................................... 19

4865-6820-4188

## INTRODUCTION AND RELIEF REQUESTED

Pursuant to Rule 56 of the Federal Rule of Civil Procedure and DUCivR 56-1, Plaintiffs Peter Hicks; Hicks, LLC; and Wasatch Hicks, LLC ("**Plaintiffs**"), by and through their counsel of record, move the Court to grant summary judgment as to liability on each of Plaintiffs' Claims for Relief. On October 14, 2022, a jury in the Southern District of New York found Defendant Trevor R. Milton, the founder and former CEO of Nikola Corporation ("**Nikola**"), guilty on various counts of securities-related fraud. Among those counts was a specific count of wire fraud in connection with Milton's purchase of property in Utah from Plaintiffs, a portion of which Milton paid by offering options to purchase Nikola stock, which plummeted in value after it was discovered that Milton had misrepresented several aspects of Nikola's business, including its products, technology, and business development. On December 18, 2023, Milton was sentenced to four years in prison and ordered to pay restitution, including an order that Milton forfeit the property he fraudulently purchased from Plaintiffs.

Milton's criminal conviction for securities fraud and wire fraud conclusively establishes each of the elements of Plaintiffs' civil securities fraud and common law claims. Under the doctrine of collateral estoppel, a party (and its privies) are prohibited from relitigating issues that were previously litigated and resolved, if the issues were identical in the previous action, the issues were decided in a final judgment on the merits in a previous action, the issues were fully and fairly litigated in the previous action, and the party against whom collateral estoppel is invoked was either a party or privy to a party in the previous action. For the reasons stated below, Milton is collaterally estopped from contesting that he defrauded Plaintiffs and therefore there are no disputed issues of material fact and Plaintiffs are entitled to judgment as a matter of law.

## BACKGROUND

This case involves the private sale of 4,678 acres of property in Morgan County, Utah (the "**Wasatch Creeks Ranch**") by Hicks to Milton in exchange for a combination of cash and Nikola securities. Specifically, as part of the transaction, Milton provided Hicks an Option Agreement, which was subsequently amended, in which Hicks was granted an option to purchase 515,095 shares of Nikola stock at a strike price of $16.50. In agreeing to accept securities as part of the consideration for the property, Hicks actually and reasonably relied on direct statements made by Milton regarding Nikola's business, its technical achievements, and the resulting value of Nikola stock, as well as the public statements made by Milton about Nikola. As detailed in an unsealed criminal indictment filed by the United States Attorney, as well as a civil action filed by the Securities and Exchange Commission ("**SEC**"), these statements were false and fraudulent. When the truth was revealed publicly, the share price of Nikola stock plummeted and destroyed the value of the option provided to Hicks as consideration for the sale of the real property.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In April 2020, a Utah real estate broker, David Anderson, informed Hicks that he had an interested buyer in the Wasatch Creeks Ranch. Declaration of Peter Hicks [hereinafter "Hicks Decl."], ¶ 3, submitted herewith in the Appendix as **Exhibit A**. The potential buyer was Milton. *Id.*

2. Anderson scheduled a call between Milton and Hicks for April 10, 2020. *Id.* at ¶ 4. Prior to this call, Anderson communicated an offer for the property of a combination of cash and an option to purchase Nikola stock. *Id.* Specifically, the offer was for a cash payment of $7.5 million combined with an option to purchase a "very substantial" amount of Nikola stock. *Id.*

3. On April 10, 2020, Milton, Anderson, Hicks, and his son Lucas Hicks had a phone call that lasted more than an hour. Hicks Decl., ¶ 5; *see* Ex. 1 (Lucas Notes) submitted

4

herewith in the Appendix; Ex. 2 (Recording of 4/10/2020 Call) submitted herewith in the Appendix; Ex. 3 (Transcript of Recording) submitted herewith in the Appendix. Therein, Milton discussed at length his own background and the background and current business and operations of Nikola. *Id.* This discussion was critical because Hicks was not familiar with either Milton or Nikola, and a substantial component of the proposed purchase price for the Wasatch Creeks Ranch was an option to purchase shares of Nikola held or controlled by Milton. *Id.*

4. During this April 2020 conversation, Milton made numerous false statements, including false statements regarding Nikola's business and the value of its securities. Hicks Decl., ¶ 6; *see* Exs. 1–3; Ex. 20. These statements are detailed in the recording of the conversation and the transcript of the conversation, which were introduced at Milton's criminal trial and about which Hicks testified. *Id.* Milton made additional false statements to the public to artificially inflate Nikola's stock. *Id.*; *see* Ex. 20. Hicks relied on Milton's private and public false statements when considering whether to accept Nikola securities as a significant portion of the consideration for Wasatch Creeks Ranch. Hicks Decl., ¶ 6.

5. After the April 2020 conversation, the parties initially were unable to agree on terms for the purchase of Wasatch Creeks Ranch. Hicks Decl., ¶ 7.

6. For nearly two months, there were no direct conversations between Hicks, Milton, or Anderson on Milton's behalf. Hicks Decl., ¶ 8. However, during this period, Hicks followed the public news and information on Nikola, including the progress of the special purpose acquisition company ("**SPAC**") and the anticipated price of Nikola shares once the SPAC was completed. *Id.* Hicks also reviewed public statements by Milton that appeared to confirm the information that had been represented in the April 2020 conversation. *Id.*

7. On June 1, 2020, at 10:07 a.m. EDT, Hicks received a text message from Anderson indicating that Milton was "in town and he wants to tour your ranch this morning." Hicks Decl., ¶ 9; Ex. 4 (Texts) submitted herewith in the Appendix. Anderson explained that Milton's interest in Wasatch Creeks Ranch was further piqued by the opportunity to also buy the adjacent Bertagnole ranch and combine the two: "If he buys yours, he'll buy the Bertagnoles as well." *Id.* Hicks texted Anderson that he and Milton could tour the property. *Id.*

8. That same day, at 3:30 p.m. EST, Milton sent a text message to Hicks on David Anderson's phone conveying his new offer:

> $8.5m cash. 30 day due diligence. 15 day close. 1mm deposit. $8.5m of options at today's closing price. 6 months form merger options are available for exercise. No obligation to exercise if you don't want. If shares are $67.94 at 6 month mark, you only pay 33.97 per share and make the difference. Shares can instant be sold that day on the Nasdaq. The 33.97 is real time quote but the option will be at today's closing price if you sign the contract today.

Hicks Decl., ¶ 10; Ex. 4 at HICKS14.

9. Hicks accepted Milton's offer later that afternoon, and the parties worked late into that evening on a Purchase and Sale Agreement ("**PSA**"). Hicks Decl., ¶ 11; Ex. 5 submitted herewith in the Appendix. Nikola paralegal Mark Gale sent the initial draft of both the PSA and the option agreements to Hicks' Utah Counsel, Matt Anderson. *Id.* Gale's work was being overseen by Nikola's chief legal counsel Britton Worthen, so Nikola was aware of the proposed transaction and that part of the consideration would be options to purchase Nikola stock owned or controlled by Milton. *Id.* Despite Nikola's counsel's knowledge of the transaction, Milton's sale of his shares through options in a private transaction was not disclosed in Nikola's SEC filings or in any separate communications to shareholders. *Id.* Rather, disclosures were only made many months later after the share price had plummeted and the options had expired. *Id.*

6

10.     The parties continued to negotiate the terms of the PSA and the option agreement through June 3, 2020. Hicks Decl., ¶ 12.

11.     The PSA and option agreements were signed by all relevant parties on or about June 2, 2020. Hicks Decl., ¶ 13; Ex. 6 (Executed PSA and Option Agreement) submitted herewith in the Appendix.

12.     David Anderson texted Hicks, on June 3, 2020, at 12:03 p.m. EST: "Congrats Peter! Wild ride to say the least. Hope you got some sleep last night" Hicks Decl., ¶ 14; Ex. 7 (Texts) submitted herewith in the Appendix.

13.     Per the terms of the PSA, there was a due diligence and closing period that followed the execution of the agreements. Hicks Decl., ¶ 15; *see* Ex. 6. If Hicks fulfilled his obligations as seller, but Milton failed to meet his obligations as buyer, Milton stood to lose his deposit of $1 million. *Id.* Thus, it was critical for Milton that the price of Nikola stock remained strong, which was echoed by David Anderson in numerous communications after June 3, 2020. *Id.* For example, on June 4, 2020, David Anderson texted Hicks: "In case you aren't watching CNBC this morning . . . I sent to you a video link, [Milton] was on CNBC talking about Nikola. Maybe the video link didn't come through? Stock is up today. Now NKLA ticker $35.750." *Id.*; Ex. 8 (Texts) submitted herewith in the Appendix. David Anderson updated Hicks on Nikola's price stock again on June 8 and 9, 2020. *Id.*

14.     Between June 3, 2020, and August 14, 2020, Milton conducted due diligence regarding the Property and confirmed that he wished to proceed with closing the transaction. *Id.* During that same period, the parties realized that there had been material mistakes with regard to the option agreement. *Id.*; Ex. 9 (Email) submitted herewith in the Appendix. Among the mistakes, instead of references to Hicks, the document referenced an unrelated entity that may

have been a different option purchase by Milton. *Id.* In an email dated August 11, 2020, from Mark Gale at Nikola (and copied to Britton Worthen) to Matt Anderson, Milton acknowledged this error, as well as the fact that (i) the number of shares and strike price were to be, and (ii) the original option exercise period violated the lock-up period imposed upon Milton by Nikola as part of the SPAC, notwithstanding Milton's efforts to shorten it. *Id.*

15. On August 14, 2020, the transaction closed, and an amended option agreement was executed by Hicks and Milton. Hicks Decl., ¶¶ 16–17; Ex. 10 (Amended Option Agreement) submitted herewith in the Appendix. The amended option agreement provided that Hicks was granted an option to purchase up to 515,095 shares of Nikola stock at a strike price of $16.50 per share. *Id.* Based on the share price of Nikola on that day, the option was worth in excess of $15 million. *Id.* In deciding to close on the transaction, Hicks relied upon his private conversations and public statements Milton had represented regarding Nikola, which Nikola has now admitted, both in testimony at the criminal trial and in a settlement with SEC, were false and fraudulent. *Id.*

16. That same day, Anderson texted Hicks: "Congrats on the ranch closing!" Hicks Decl., ¶ 18; Ex. 11 (Texts) submitted herewith in the Appendix. Milton also emailed Hicks: "We are about to have the best 4 months of Nikola in history so I am excited about that as well." Hicks Decl., ¶ 18; Ex. 12 (Email) submitted herewith in the Appendix.

17. Less than a month later, on September 10, 2020, a financial research firm that had taken a short position in Nikola, Hindenburg Research ("**Hindenburg**"), published a report asserting, among other things, that Milton had made misrepresentations about Nikola's business. Hicks Decl., ¶ 19; Ex. 13 (Report) submitted herewith in the Appendix.

18. Nikola's stock price fell dramatically on news of the report. Hicks Decl., ¶ 20.

19. Nikola disclosed in its filings with the SEC that on September 20, 2020, Milton resigned from his position as Executive Chairman. Hicks Decl., ¶ 21; Ex. 14 (SEC 8-K filing) submitted herewith in the Appendix.

20. In response to an inquiry from Hicks about his options, Milton wrote in a September 16, 2020, email:

> I can't do anything as of now due to the fact we are in communication with the SEC. While I can't go into detail, I can tell you we have not done anything wrong, it was a coordinated attack to discredit us. Much like Telsa, this a fact of life where people target you and try to hurt you. They made a reported 51 million USD on the first attack and unknown amount in the whole process. They do it for the money, not truth.

Hicks Decl., ¶ 22; Ex. 12 at HICKS2917.

21. Four days later, Milton resigned from Nikola and as revelations of his false statements and fraud began to mount, the stock price of Nikola continued to fall, destroying the value of the options provided to Hicks. Hicks Decl., ¶ 23.

22. On February 25, 2021, Nikola filed its Form 10-K for the year ending December 31, 2020. Hicks Decl., ¶ 24; Ex. 15 (SEC 10-K filing) submitted herewith in the Appendix. In the filing, Nikola admitted that certain statements Milton had previously made were "inaccurate in whole or in part, when made." *Id.* Nikola's stock price fell approximately 57 percent between the date of Hindenburg's report and the day after the release of the Form 10-K. *Id.*

23. On July 29, 2021, the United States Attorney for the Southern District of New York announced that it had arrested Milton and unsealed an indictment against Milton for the acts described in Plaintiffs' Complaint ("**Criminal Case**"). Hicks Decl., ¶ 26; *see* Indictment, *USA v. Milton*, Case No. 1:21-cv-00478-ER (ECF 1) (S.D.N.Y. filed on July 28, 2021), Ex. 16 (Indictment and Docket Sheet) submitted herewith in the Appendix.

24. The same day, the Securities and Exchange Commission ("**SEC**") filed a civil complaint against Milton in the United States District Court for the Southern District of New York alleging the conduct alleged in Plaintiffs' Complaint ("**SEC Case**"). Hicks Decl., ¶ 27; *see* Complaint, *SEC v. Milton*, Case No. 1:21-cv-006445 (ECF 1) (S.D.N.Y. filed on July 29, 2021), Ex. 17 (SEC Complaint and Docket Sheet) submitted herewith in the Appendix. On August 8, 2022, the Court stayed the SEC Case pending the resolution of the Criminal Case. Hicks Decl., ¶ 26; *see* Order Granting Motion to Intervene and Stay, *SEC v. Milton*, Case No. 1:21-cv-006445 (ECF 40) (S.D.N.Y. filed on Aug. 30, 2022). The stay on the SEC Case continues to this day. Hicks Decl., ¶ 26; *see* Letter, *SEC v. Milton*, Case No. 1:21-cv-006445 (ECF 50) (S.D.N.Y. filed on Sept. 26, 2023).

25. On June 22, 2022, the United States Attorney filed a Superseding Indictment (ECF 123) in the Criminal Case—adding a Count Four against Trevor Milton for criminal wire fraud specifically related to his purchase of the Wasatch Creeks Ranch. Hicks Decl., ¶ 27; Superseding Indictment, *USA v. Milton*, Case No. 1:21-cv-00478-ER (ECF 123) (S.D.N.Y. filed on June 22, 2022), Ex. 18 (Amended Indictment) submitted herewith in the Appendix. Count Four provides as follows:

> From at least in or about April 2020 through at least in or about March 2021, in the Southern District of New York and elsewhere, TREVOR MILTON, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MILTON engaged in a scheme to defraud the sellers of a property known as Wasatch Creeks Ranch through false and misleading statements regarding Nikola's product, technology, and business development, and, as part of that scheme, engaged in conduct designed to lull the sellers

10

>and postpone actions by the sellers that would bring Milton's false and misleading statements to light, including through the use of interstate wires.

Ex. 18 at HICKS3499–3500. *See also* Letter by USA, *USA v. Milton*, Case No. 1:21-cv-00478-ER (ECF 124) (S.D.N.Y. filed on June 22, 2022), Ex. 19 submitted herewith in the Appendix.

26. Between September and October 2022, Milton was put on trial for the Criminal Case. The trial took 18 days and 14 witnesses (including Hicks). Hicks Decl., ¶ 28; Ex. 20 submitted herewith in the Appendix. The jury instructions, which the Court read to the Jury on October 14, 2022, are attached herewith in the Appendix as Exhibit 20 at HICKS6713–32. *See* Hicks Decl., ¶ 29; Ex. 20.

27. On October 14, 2022, the Jury unanimously found Milton guilty of one count of Securities Fraud Under Title 15 and two counts of Wire Fraud Under Title 18—including Count Four. Verdict Form, *USA v. Milton*, Case No. 1:21-cv-00478-ER (ECF 213) (S.D.N.Y. filed on Oct. 17, 2022). Hicks Decl., ¶ 30; Ex. 21 submitted herewith in the Appendix.

28. On December 18, 2023, the Court sentenced Milton to four years in prison, entered a final judgment on the jury verdict and conviction, and ordered forfeiture of the Wasatch Creeks Ranch property. Minute Entry, *USA v. Milton*, Case No. 1:21-cr-00478-ER (S.D.N.Y. entered on Dec. 18, 2023); Hicks Decl., ¶ 31.

## ARGUMENT

Summary judgment is appropriate where the evidence presented shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. No genuine issue of material fact exists unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022). Summary judgment is appropriate where factual issues were tried in a prior criminal

proceeding such that a trial on the same facts in a parallel civil proceeding is unnecessary because the claims are barred by the doctrine of collateral estoppel. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995).

I. **Collateral Estoppel Bars Defendant From Relitigating Issues That Were Conclusively Established in the Criminal Case**

Collateral estoppel (also referred to as issue preclusion) prevents parties or their privies from relitigating "particular issues that have been contested and resolved" in a previous action. *Carpenter v. Nova Cas. Co.*, 403 F. Supp. 2d 1068, 1071 (D. Utah 2005) (citing *Swainston v. Intermountain Health Care*, 766 P.2d 1059, 1061 (Utah 1988)). Findings in a prior criminal proceeding may estop a party in a subsequent civil action. *Carpenter*, 403 F. Supp. 2d at 1071–72 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157 (1963)); *Rushing v. Kolotov*, 2006 WL 650125, at *3 (D. Colo. Mar. 14, 2006) (unpublished) (holding that prior criminal conviction precluded re-litigation of issues in civil case).

Federal courts apply state collateral estoppel rules in determining whether a prior judgment precludes litigation of an issue. *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992).[1] Utah has a four-part test for collateral estoppel: (1) the issue challenged must be identical in the previous action and in the case at hand; (2) the issue must have been decided in a final judgment on the merits in the previous action; (3) the issue must have been competently, fully, and fairly litigated in the previous action; and (4) the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous

---

[1] In any event, the Tenth Circuit has recognized that collateral estoppel requirements under Utah law are substantially the same as under federal law. *See Frandsen*, 46 F.3d at 978.

12

4865-6820-4188

action. *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1222 (Utah 2000). For collateral estoppel to apply, all four elements must be present. *Id.*

      a.      **The Issues in the Criminal Case and This Case Are Identical**

To meet the first prong of the Utah test for collateral estoppel, Plaintiffs must show that the issues in this case are virtually identical to the issues raised in the Criminal Case. *Mendoza-Martinez*, 372 U.S. at 157. There can be no reasonable dispute that they are. In the Criminal Case, Milton was generally accused of devising a scheme to defraud investors in Nikola through false and misleading statements regarding the company's products, technology, and business development. Ex. 20 of App. (Jury Instructions) at 3200:22–3201:2. To prove securities fraud, the Government was required to show, beyond a reasonable doubt, that Milton, in connection with the purchase or sale of securities (1) employed a device scheme, or artifice to defraud, or made an untrue statement of a material fact or omitted a material fact which made what was said, under the circumstances, misleading, or engaged in an act, practice, or course of business that operated as a fraud or deceit upon a purchaser or seller; (2) acted knowingly, willfully, and with an intent to defraud; and (3) that in furtherance of the fraudulent conduct, used any means or instruments of transportation or communication in interstate commerce, or use of the mails, or the use of any facility of any national securities exchange. Ex. 20 of App. (Jury Instructions) at 3203:5-21. The jury found, beyond a reasonable doubt, that the Government proved each element of securities fraud.

Likewise, here, Plaintiffs have asserted claims against Milton for federal securities fraud, violation of the analogous Utah Uniform Securities Act, and common law fraud. The elements of Plaintiffs' civil securities fraud claims are indistinguishable from the elements litigated in the Criminal Case. To recover damages for violation of Rule 10b-5, a civil plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  Similarly, under Utah Code § 61-1-1, it "is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to: (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  For the purposes of collateral estoppel, the issues related to Milton's securities fraud in the Criminal Case are identical to Plaintiff's claims here.

Additionally, the Government charged Milton with wire fraud specifically based on his "scheme to defraud the sellers of a property known as Wasatch Creeks Ranch through false and misleading statements regarding Nikola's product, technology, and business development, and, as part of that scheme, engaged in conduct designed to lull the sellers and postpone actions by the sellers that would bring Milton's false and misleading statements to light, including through the use of interstate wires." Ex. 18 of App. (Superseding Indictment) at p. 4. To prove wire fraud in the Criminal Case, the Government was required to show, beyond a reasonable doubt, that Milton (1) engaged in a scheme or artifice to defraud or obtain the Wasatch Creek Ranch by means of false or fraudulent pretenses, representations, or promises; (2) with an intent to defraud, and (3) through the use of interstate wire or radio communications to execute the scheme.  *See U.S. v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (citing 18 U.S.C. § 1343); s*ee also* Ex. 20 of App. (Jury Instructions) at 3212:15-3218:14. The jury found, beyond a reasonable doubt, that the

Government proved each element of its wire fraud claim and convicted Milton of defrauding the Plaintiffs.

"Under Utah law, to bring a claim sounding in fraud, a party must allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage." *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996). The issues concerning Milton's wire fraud in the Criminal Case are sufficiently identical for collateral estoppel to apply to Plaintiff's civil fraud claims in this case.

Indeed, courts have held that issues litigated for purposes of a criminal conviction "conclusively establish those issues for later civil litigation." *U.S. v. $2,590.00*, 1990 WL 36762, at *1 (N.D. Ill. March 14, 1990) (unpublished) (issues at stake in civil proceeding was identical to the issue central to the prior criminal case); *Instituto Nacional De Comercializacion Agricola v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 576 F. Supp. 991, 997 (N.D. Ill. 1983) (criminal conviction "*conclusively* (not just presumptively) establishes issues actually litigated for purposes of later *federal* civil litigation") (emphasis in original); *SEC v. Durham*, 370 F. Supp. 3d 954, 960–62 (S.D. Ind. 2019) (defendant's conviction of criminal securities fraud was sufficient to conclusively establish he also committed civil violations of federal securities laws). This is particularly true where, as here, the indictment in the criminal case expressly references the conduct that forms the basis of the subsequent civil case. *See, e.g., Crum & Forster Ins. Co. v. Goodmark Indus., Inc.*, 488 F. Supp. 2d 241, 245 (E.D.N.Y. 2007) (identity

4865-6820-4188

of issues found where "the issue of liability for the fraudulent insurance claims was material to the criminal action and is the issue to be decided in the present case."). This is, in part, due to the higher burden of proof required for a criminal conviction. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986) (because the Government bears a higher burden of proof in the criminal context than in the civil context, parties may rely on the collateral estoppel effect of a criminal conviction in a subsequent civil case). Additionally, it would be "a great detriment to the legal system if a civil jury did not find a person responsible by a preponderance of the evidence for a criminal act which the person had already been convicted of beyond a reasonable doubt." *Allen v. Cunningham*, 51 F.3d 285 (10th Cir. 1995); s*ee also Howard v. City of Coos Bay*, 871 F.3d 1032, 1040–41 (9th Cir. 2017) ("Issue preclusion, or collateral estoppel, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, *even if the issue recurs in the context of a different claim*."); *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 327 (1979) (collateral estoppel has the dual purpose of protecting litigants from the burden of relitigating the same issues and promoting judicial economy); *Richey v. United States Internal Revenue Service*, 9 F.3d 1407, 1410 (9th Cir. 1993) (issues need only be the same "in substance").

      b.      **Milton's Fraud Was Decided in a Final Judgment on the Merits**

Here, there can be no dispute that Milton's securities fraud and mail fraud were decided in a final judgment on the merits in the Criminal Case. The jury's verdict, coupled with the court's entry of a sentence in the Criminal Case constitutes a final judgment on the merits. *See Poole v. State Farm Fire & Cas. Co.*, 125 F.3d 862 (10th Cir. 1997) (guilty verdict in prior criminal trial was a final judgment for collateral estoppel purposes, even if the defendant raised different defenses in subsequent civil case). The issues decided in the Criminal Case were also "essential to the judgment." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th

16

Cir. 2014) (citing *Arizona v. California*, 530 U.S. 392, 414 (2000)). Indeed, the Government was required to prove each element of its securities fraud and mail fraud claims beyond a reasonable doubt in order to prevail. *See Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 925 (10th Cir. 1992) (applying collateral estoppel to federal securities claims).

Milton's pending appeal of his criminal conviction does not alter the fact that his conviction in the Criminal Case was decided in a final judgment on the merits. The Tenth Circuit has held that "Utah law provides that, unless it is reversed on appeal, a judgment is final for issue preclusion purposes." *Atiya v. Salt Lake County*, 988 F.2d 1031, 1020 (10th Cir. 1993); s*ee also Copper State Thrift and Loan v. Bruno*, 735 P.2d 387, 390 (Utah Ct. App. 1987) ("A judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition.").[2] Accordingly, "[t]he fact that a portion of a final judgment in the prior suit is pending does not affect the finality of the judgment for purposes of res judicata." *Youren v. Tintic School Dist.*, 86 P.3d 771, 773 (Utah Ct. App. 2004). Therefore, the pendency of Milton's appeal does not affect the finality of the judgment, and in turn, has no bearing on the application of collateral estoppel to these proceedings.

### c. Milton Fully and Fairly Litigated the Issues in the Criminal Case

Under Utah law, in order to satisfy the full and fair litigation prong of the collateral estoppel test, "the parties must receive notice under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Chemical Weapons Working Group, Inc. v. U.S. Dept. of the Army*, 990 F. Supp. 1316, 1319 (D. Utah 1997) (citing *Career Serv. Review Bd. v. Department of Corrections*, 942 P.3d 933, 939 (Utah

---

[2] *See also Wexler v. U.S.*, 1992 WL 74167, at *1 (10th Cir. April 7, 1992) (unpublished) ("It is well settled that a final judgment retains all of its res judicata consequences pending decision of the appeal.")

1997)). Often, the "inquiry into whether a party had a full and fair opportunity to litigate an issue . . . will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature of the relationship of the parties." *Salguero v. City of Clovis*, 366 F.33d 1168, 1174 (10th Cir. 2004). It should go without saying that an 18-day federal jury trial, where Hicks testified and was cross-examined by Milton's counsel, gave Milton the opportunity to fully and fairly litigate all issues in the Criminal Case. *See, e.g. Buck v. Myers*, 2010 WL 2869462, at *3 (D. Utah July 20, 2010) (unpublished) (plaintiff had opportunity to fully and fairly litigate issues during criminal jury trial while represented by counsel). Certainly, Milton had every incentive to prove his innocence, and hired a team of highly experienced attorneys to defend him. *See Williams v. Jamison*, 2022 WL 2717639, at *2 (W.D. Ky. July 13, 2022) (unpublished) (criminal defendant had every incentive to fully litigate claims, supporting collateral estoppel effect of criminal conviction); *Schroeder v. Comcast Corp.*, 2012 WL 215329, at *3 (N.D. Cal. Jan. 24, 2012) (unpublished) (same); *Investigations Officer v. Paccione*, 2002 WL 72934, at *4 (S.D.N.Y. Jan. 17, 2002) (unpublished) (criminal defendant had "greatest incentive" to fully defend himself and had greater safeguards as a criminal defendant, warranting application of collateral estoppel); *Campbell v. State of Maine*, 632 F. Supp. 111, 119 (D. Maine 1985) (it is assumed that a criminal defendant facing serious charges has every incentive to vigorously defend those charges).

      **d.**      **Milton Was a Party to Both Actions**

It is undisputed that Milton was a party to the Criminal Case and this case. Moreover, it cannot be disputed that M&M Residual, LLC and T&M Residual, LLC are in privity with Milton. Milton signed the Option Agreement on behalf of each entity as their manager. Milton's criminal conviction therefore applies to the entities for collateral estoppel purposes. *See BSJ*

*Travel Inc. v. Ogden City Airport*, 2023 WL 4868532, at *2 n. 5 (D. Utah July 31, 2023) (unpublished) (finding plaintiff was in privity with LLC of which he was the principal manager); *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (LLC's manager and sole member was in privity with LLC for res judicata purposes).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter summary judgment on liability with regard to each of their claims.

DATED February 19, 2024.

/s/ Erik A. Christiansen
Erik A. Christiansen
PARSONS BEHLE & LATIMER

Christopher Robertson *(pro hac vice)*
SEYFARTH SHAW LLP

Attorneys for Plaintiff PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC

## CERTIFICATE OF COMPLIANCE

I, Alex Vandiver, certify this Motion contains 5,493 words, which is less than 12,400 words, and complies with DUCivR 7-1(a)(4). This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

*/s/ Alex Vandiver*
Alex Vandiver

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2024, I caused a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** to be filed on CMF and accordingly electronically served to the parties of record.

*/s/ Alex Vandiver*
Alex Vandiver