Brent O. Hatch (5715)
hatch@hatchpc.com
Adam M. Pace (14278)
pace@hatchpc.com
**HATCH LAW GROUP, PC**
22 East 100 South, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 869-1919

*Counsel for Defendants*

---

**IN THE UNITED STATED DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TREVOR R. MILTON, M&M RESIDUAL, LLC and T&M RESIDUAL, LLC,<br><br>Defendants. | **MOTION FOR SPOLIATION SANCTIONS RE: PLAINTIFFS' INTENTIONAL DESTRUCTION OF EVIDENCE**<br><br>Case No. 2:22-cv-00166<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

## TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS FOR RELIEF .......... 1

RELEVANT FACTS .......... 2

ARGUMENT .......... 7

I. Plaintiffs acted with the intent to deprive Defendants of relevant text messages between Peter and Lucas Hicks .......... 7

A. Peter's duty to preserve evidence began by June 4, 2020 .......... 7

B. Defendants are prejudiced by Peter's intentional deletion of text messages .......... 8

II. Terminating sanctions are warranted due to Plaintiffs' discovery abuses and spoliation of evidence .......... 9

III. In the alternative, Defendants are entitled to an adverse inference jury instruction based on Plaintiffs' spoliation .......... 11

CONCLUSION .......... 12

## RELIEF SOUGHT AND GROUNDS FOR RELIEF

In April 2023, Defendants requested that Plaintiffs produce all relevant communications between Plaintiff Peter Hicks ("Peter") and his son Lucas Hicks ("Lucas"), who is a 0.5% owner of Plaintiff Hicks, LLC.[1] Peter did not turn over any such text messages, falsely representing to the Court that on his phone, "**no texts** between Plaintiffs and Lucas Hicks **exist prior to July 2021**." (ECF No. 51-1 p. 30 (emphasis added).) In response, Defendants filed a short form discovery motion, and the Court ordered Plaintiffs to produce the requested communications. (ECF No. 65 p. 5.) In response to that Court order, Plaintiffs still did not produce any text messages between Plaintiffs and Lucas Hicks. Separately, the Court ordered that Plaintiffs must provide their devices to be imaged. A forensic analysis of Peter's phone shows that, contrary to Plaintiffs' representations, **Peter's phone contains nearly 300 text messages between Peter and Lucas from before July 2021** (*see* List of Text Messages between Peter Hicks and Lucas Hicks, **Ex. 1**), at least two of which are clearly relevant to this case (*see id.* at Text Nos. 4 & 16).

Most troublingly, the forensic analysis of Peter's phone demonstrated that those nearly 300 text messages from before July 2021 were all sent or received on and after March 5, 2021, i.e., ***after the critical time period*** at issue in this lawsuit which was between April 2020 (when the parties began discussions about the sale of the Ranch) through March 1, 2021 (when the parties concluded their business dealings). The evidence demonstrates that ***all*** of the relevant text messages between Peter and Lucas dated before March 5, 2021 were ***deleted*** from Peter's phone. Expert Scott Tucker opines that the only plausible explanation for the loss of Peter's numerous relevant text messages with Lucas—particularly between the critical time period of April 2020 through March 2021—was

[1] *See* Case No. 2:24-mc-00176, ECF No. 48 p. 6 ("Plaintiffs submitted a 2018 operating agreement showing Lucas owns a half percent profit interest in Hicks, LLC.").

that the text messages were intentionally deleted. Because Plaintiffs intentionally destroyed relevant evidence, Defendants request terminating sanctions. In the alternative, Defendants request an adverse inference.

## **<u>RELEVANT FACTS</u>**

1. The parties entered into the Purchase and Sale Agreement ("PSA") on about June 3, 2020. (*See* ECF No. 2, ¶ 185.)

2. Plaintiffs represented in this litigation that they anticipated litigation by the day after the PSA was completely signed, i.e., as of June 4, 2020. (*See* **Ex. 2** [Plaintiffs' privilege log asserting the work product doctrine based on Plaintiffs' "anticipation of litigation" as of **<u>June 4, 2020</u>**].)

3. Thus, Plaintiffs' obligation to preserve evidence (including text messages) began by June 4, 2020.

4. Despite anticipating litigation by June 4, 2020, Peter Hicks testified that he did not do anything beyond what he normally does in order to preserve evidence (including text messages) related to the subject of this litigation. (*See* **Ex. 3**, P. Hicks Dep. (I) 228:7-229:6 ["I didn't know there was more that needed to be done."].)

5. More egregiously than a mere failure to preserve texts, however, Peter intentionally **deleted all his one-on-one texts with Lucas** that pre-dated March 5, 2021 (see SOF 20, below). That date is significant because it just so happened to fall within a few days of when Peter's final transaction with Milton had been consummated. Thus, Peter's clear intention was to destroy all evidence of his communications with Lucas during the prior nearly one year. His intentional destruction of this relevant evidence creates a strong inference that he also destroyed other relevant evidence that Defendants have no way to identify.

6. During discovery, on April 6, 2023, Defendants requested from Plaintiffs a copy of

"all documents and communications that refer or relate in any way to Trevor Milton, Nikola Motors, or the Wasatch Creek Ranch Property from January 1, 2020 to the present," specifically requesting "all responsive communications between or among you and . . . Lucas Hicks . . . ." (*See* Def.'s RFP No. 12, quoted at ECF No. 51-1 p. 28.)

7. While waiting for Peter to respond to his discovery requests, on May 18, 2023, Defendants also served non-party Lucas Hicks with a subpoena in New York. (*See* Subpoena served on Lucas Hicks dated 5/15/23, **Ex. 4**.) The Subpoena requested (among other things) that Lucas produce "all documents and communications . . . that refer or relate in any way to Trevor Milton, Nikola, or the sale of the Wasatch Creeks Ranch." (*Id.* at PDF p. 9.)

8. Lucas' New York counsel objected on June 5, 2023 and produced some documents but no text messages between Lucas and Peter, ultimately forcing Defendants to file a motion to compel in the Southern District of New York ("SDNY") to obtain Lucas's texts. (*See* Motion to Compel, **Ex. 5**.) In the end, only after being ordered to do so by the SDNY, Lucas finally produced some screen captures of text messages, some of which were redacted (claiming attorney-client privilege). (*See* **Ex. 6** (Table of Text Messages); *see also* **Ex. 7** (privilege log).) The SDNY denied Defendants' request to image Lucas's phone, thus limiting Defendants' access to only the texts selectively produced by Lucas.

9. Lucas testified that he personally (not an attorney) determined which texts he believed were responsive. (L. Hicks Dep. 146:1-9, 158:9-16, **Ex. 8**.) This review by Lucas resulted in at least two **known** text messages not being produced that Lucas should have produced. (*See* Consilio recovered texts, **Ex. 9**.) Those texts are known to have been withheld by Lucas, and are only known to exist because this Court allowed a forensic search of Peter's phone. Unfortunately, a forensic search cannot recover deleted messages, and Peter **<u>deleted at least 140 known, relevant</u>**

**texts** between him and Lucas.

10. Lucas was instructed by his attorney not to answer—based on the Fifth Amendment—as to whether additional text messages were not provided. (*Id.* 146:18-24.) Lucas was also instructed by his attorney not to respond to a question regarding whether there were text messages between Lucas and Peter with respect to the recording Lucas made of the April 10, 2020 phone call with Defendant Milton. (*Id.* 146:10-17.)

11. For Peter's part, in response to RFP No. 12, Peter initially responded on June 16, 2023, claiming that "the vast majority of responsive documents have already been produced to Defendants in the criminal matter pending in the Southern District of New York." (*See* Plfs.' Resp. to RFP No. 12, **Ex. 10**.) Notably, that production of documents did not include any text messages between Lucas and Peter.

12. In response to a meet and confer, on August 11, 2023 Plaintiffs submitted a supplemental response to RFP No. 12, stating that "**Plaintiffs cannot produce any text messages between Peter Hicks and Lucas Hicks** exchanged prior to 2021, because Plaintiffs do not possess those text messages. After a thorough search of his phone, Plaintiffs have confirmed that **no texts between Plaintiffs and Lucas Hicks exist prior to July 2021**." (*See* ECF No. 51-1 p. 30 / Plfs.' Resp. to RFP No. 12 (emphasis added).) Plaintiffs also claimed that whatever texts "may have existed in 2020" are privileged because they were in anticipation of this litigation. (*Id.*)

13. Defendants filed a short form discovery motion, in part, to compel (1) a response to RFP 12, and (2) forensic examination of "Plaintiffs' electronic devices . . . to locate and produce responsive documents including recovery of deleted documents." (ECF No. 51 p. 3.)

14. On August 30, 2023, Plaintiffs claimed that "[t]he circumstances of this lawsuit aro[]se three years ago. Plaintiff Peter Hicks has since changed his phone and, in the process, lost

text messages exchanged with Lucas Hicks." (ECF No. 52 p. 4 n.16.)

15. On November 7, 2023 Magistrate Judge Oberg ruled that (1) "Plaintiffs must produce all nonprivileged documents responsive to RFP[ . . . ] 12 from January 1, 2020 to the filing of this lawsuit,"[2] and (2) "Defendants have demonstrated the requested forensic examination is warranted based on discrepancies between the documents produced by Peter Hicks and Lucas Hicks, as well as Plaintiffs' claim that responsive text messages are no longer available on Peter Hicks' phone. Under these circumstances, a forensic examination may be the only way to obtain all responsive documents." (ECF No. 65 p. 4-5.) That forensic examination was later performed by Consilio.

16. In his April 2024 deposition, Peter's explanation for the loss of his text messages with Lucas was that Peter dropped his phone on the beach (Ex. 3, P. Hicks Dep. (I) 93:7-12); it began malfunctioning (*id.* at 93:7-22); and he took the phone to the Apple Store in or near Stewart, Florida to have the data transferred (by Apple representatives) to a new phone (*id.* at 92:13-93:6).

17. Following the data transfer performed by Apple representatives, the only missing content of which Peter is aware are his text messages with Lucas, allegedly from prior to July 2021. (*Id.* at 98:23-99:4.) Peter did not notice that anything else was missing. (*Id.* at 95:22-96:1.)

18. Consilio performed imaging services on Peter's devices, and separately, in response to Defendants' subpoena, Lucas produced some text messages that were relevant to the transactions at issue in this case. There is an inference that he withheld other relevant documents from his production based on his assertion of the Fifth Amendment privilege and refusal to answer whether he did so.

19. A chronological table of the text messages produced by Lucas (sent between Lucas

[2] *See also* ECF No. 65 p. 5 ("Plaintiffs are ordered to produce documents responsive to RFP[] 12 consistent with this order.").

and Peter, Ex. 6) demonstrates the following:

a. A comparison of the texts on Lucas's phone (*see* Ex. 6) and the texts on Peter's phone (Ex. 1) shows that **all** of the texts from 04/08/2020 – 3/2/2021 that Lucas produced had been ***deleted from Peter's phone***; and

b. Peter's representations in this case about his phone not having any text messages between him and Lucas from prior to July 2021 are demonstrably false. There are texts on his phone between March 2021 and July 2021; Peter simply made no effort to produce them, and falsely represented that they did not exist.

20. Moreover, Expert Scott Tucker opined that Peter's explanations are implausible, and the only explanation for the loss of selected text messages on Peter's phone (i.e., texts between Lucas and Peter) is that they were intentionally deleted. (*See* Expert Report of Scott Tucker, **Exhibit 11**, and Supplemental Expert Report of Scott Tucker, **Exhibit 12**.) Significantly, Plaintiffs failed to designate any expert to rebut the opinions set forth by Mr. Tucker.

21. Such relevant texts deleted by Peter include: links to SEC filings received from Lucas (Lucas Text Nos. 45, 55); details and timelines and other information derived from SEC filings (Lucas Text Nos. 44, 46-52, 57-68); texts discussing negotiations regarding the sale of the Ranch (Lucas Text Nos. 13-27, 31); texts regarding news articles discussing Nikola and Milton (Lucas Text Nos. 10, 40, 42-43, 53, 69-70, 72, 77-78, 80-81, 83-85, 88, 90, 105, 113); and texts regarding anticipated litigation and/or possible resolution (Lucas Text Nos. 75, 91-95, 117-127, 140-143). These deleted texts are highly relevant to Defendants' defenses against Plaintiffs' securities fraud claims in this case, because they support the jury finding that Plaintiffs knew the truth about the alleged misrepresentations through their independent research of Nikola; and that the alleged misrepresentations were not material and were not reasonably relied upon when Plaintiffs sold the Ranch to Defendants.

22. Scott Tucker opines that, based on the frequency with which Lucas and Peter

communicated via text, Peter's deletion would have resulted in the loss of between 800 and 1,100 text messages between April 1, 2020 and March 5, 2021. (*See* Ex. 12 at p. 4.) And given that the largest deal the Hickses were working on in 2020 were the transactions at issue in this case, a significant number of those texts (even beyond the 140+ that we know Peter deleted) would have involved, or were at least related to, those transactions.

## ARGUMENT

### I. Plaintiffs acted with the intent to deprive Defendants of relevant text messages between Peter and Lucas Hicks.

"Sanctions for spoliation of evidence are appropriate when the party had a duty to preserve the evidence because it knew or should have known that litigation was imminent, and the other party was prejudiced by the destruction of the evidence." *Martin v. SGT, Inc.*, 2022 WL 17975993, at *12 (D. Utah Dec. 28, 2022). With respect to electronically stored information ("ESI") such as text messages on a cell phone, spoliation occurs if, despite a duty to preserve, ESI "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e) (cleaned up). Where the "party acted with the intent to deprive another party of the information's use in the litigation," appropriate sanctions include "dismiss[al of] the action," *id.* at 37(e)(2)(C), or alternatively, a "presum[ption] that the lost information was unfavorable to the party." *Id.* at 37(e)(2)(A)-(B).

#### A. Peter's duty to preserve evidence began by June 4, 2020

By definition, a party anticipates litigation no later than when work product materials are being created for that anticipated litigation. The work product doctrine is set forth in Rule 26: "Ordinarily, a party may not discover documents and tangible things that are **prepared in anticipation of litigation** or for trial by or for another party or its representative (including the other

party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* at 26(b)(3)(A) (emphasis added). If a party claims work product protection for materials created on and after a certain date, courts reject the attempt by that same party from also claiming it did not have a duty to preserve evidence that existed as of that date. *See, e.g., PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1189 (D. Or. 2012) (party "judicially estopped" from taking inconsistent positions on when the work product doctrine applied versus when duty to preserve began); *Siani v. State Univ. of New York at Farmingdale*, 2010 WL 3170664, at *5 (E.D.N.Y. Aug. 10, 2010) ("If it was reasonably foreseeable for work product purposes, . . . it was reasonably foreseeable for duty to preserve purposes."); *sanofi-aventis Deutschland GmbH v. Glenmark Pharms. Inc.*, 2010 WL 2652412, at *5 (D.N.J. July 1, 2010) ("duty to impose a litigation hold and to institute legal monitoring for purposes of compliance arose no later than" when party asserted work product doctrine applied), aff'd sub nom. *Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., USA*, 748 F.3d 1354 (Fed. Cir. 2014).

As indicated above, Plaintiffs claimed in this litigation that they anticipated litigation by June 4, 2020. (SOF 2-3.) Thus, by June 4, 2020, Plaintiffs had a duty to preserve evidence. It is clear that Plaintiffs acted with the intent to deprive Defendants of relevant text messages between Peter and Lucas. (*See* SOF 20.) Specifically, Peter Hicks intentionally deleted **at least 140 known texts** between himself and Lucas. (*Id.*)

### B. Defendants are prejudiced by Peter's intentional deletion of text messages

Moreover, Defendants are prejudiced by Plaintiffs' actions because their main defense in this case is that any reliance placed on the alleged statements of Defendant Milton was not reasonable, in part because he was fully aware of the SEC filings which fully disclosed the current, pre-revenue status of Nikola and its projects. Here, Peter deleted over 140 known, **relevant** text messages that he sent to or received from Lucas between April 8, 2020 and March 2, 2021. It is

apparent from the substance of the text messages deleted by Peter that he did not want Defendants to discover in this litigation that he was fully aware of SEC filings and news articles which accurately described the status of Nikola: its business plans, the state of its technology, and its plans for routes and hydrogen stations.

We are aware of some of the text messages that were deleted by Peter only because Lucas produced them—which he did only after Defendants filed a motion to compel. But we know that Lucas did not produce everything. Lucas (not an attorney) selected what text messages to turn over. (SOF 9.) Based on the imaging of Peter's phone that was ordered, we know of at least two relevant text messages that Lucas held back. Moreover, in his deposition, Lucas took the Fifth Amendment as to whether he turned over every text message, strongly indicating that Lucas held back many additional texts of which Defendants are not even aware. (SOF 10.[3]) Indeed, Tucker estimates that Peter would have deleted between 800 and 1,100 texts between April 1, 2020 and March 5, 2021. Thus, Defendants' defense is prejudiced as Defendants are not able to show exactly what Plaintiffs knew, and when, which they would have been able to show clearly if all relevant texts and communications had been preserved and produced. Unfortunately, that has not happened here.

The only way to remedy Plaintiffs' discovery misconduct—intentional spoliation of over 140 relevant text messages, violation of this Court's order to turn over relevant communications, and misrepresentations as to texts available on Peter's phone—is to issue sanctions.

---

[3] Lucas testified that he was "going to follow every single one of the instructions that [his] counsel gives" him wherein she instructed Lucas not to answer based on the Fifth Amendment. (Lucas Dep. 36:21-25.) Defendants' arguments in ECF No. 115 regarding the adverse inference arising from Lucas's exercise of his Fifth Amendment rights are incorporated by reference.

## II. Terminating sanctions are warranted due to Plaintiffs' discovery abuses and spoliation of evidence.

During discovery, Plaintiffs have stonewalled Defendants' efforts to obtain relevant communications at every turn. Even despite a Court order mandating that they turn over all responsive communications, Plaintiffs refused to turn over dozens of relevant text messages that are on Peter's phone. Plaintiffs made no effort to turn over numerous relevant emails that were in Peter's email account. Defendants only obtained such texts by means of a forensic search of Peter's devices and accounts. Similarly, Lucas, who is an owner of Plaintiff Hicks, LLC, also refused to turn over his relevant text messages, going so far as to imply to the SDNY that they do not even exist. Defendants had to file a short form discovery motion in order to obtain from Peter even **a single text** between Peter and Lucas, including ones that Peter said that do not exist (i.e., from before July 2021). Moreover, Defendants had to file a motion to compel in New York to get Lucas to turn over **a single text message**. On top of such discovery abuses, what Lucas did turn over (through his own self-selection) made crystal clear that Plaintiffs intentionally destroyed relevant evidence.

"Even taken individually, [a party's] repeated failure to comply with court orders, alteration of evidence, or spoliation of evidence may warrant dismissal." *Martin*, 2022 WL 17975993, at *19. There are "five factors courts must consider before resorting to entry of judgment as a sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; (5) the efficacy of lesser sanctions." *Amann v. Off. of Utah Att'y Gen.*, 2023 WL 7218696, at *2 (D. Utah Nov. 2, 2023) (cleaned up). Factors 1-3 and 5 are strongly in Defendants' favor.

Because lack of reasonable reliance is Defendants' primary defense to Plaintiffs' claims, the

intentional spoliation of evidence—to directly thwart Defendants' ability to put on that very defense—is extremely prejudicial. Any such prejudice is not cured by the texts that Lucas turned over; he self-selected the texts that he provided, and we know he missed at least two relevant texts that he should have turned over. Moreover, **Lucas refused to testify** regarding whether even more text messages were kept back from Defendants. Moreover, Plaintiffs and Lucas greatly interfered with the judicial process, stonewalling Defendants' efforts to obtain the texts in question at every turn. Plaintiffs violated a Court order, refusing to turn over **any** texts with Lucas, and even misrepresenting to the Court that no such texts existed on Peter's phone from prior to 7/21. Plaintiffs are culpable because Peter's relevant texts with Lucas were not lost due to negligence, but over 140 known, relevant texts were intentionally deleted by Peter. Lesser sanctions would not be efficacious because Defendants' ability to show Plaintiffs' reasonable reliance is compromised.

Accordingly, default judgment should be entered against Plaintiffs, in favor of Defendants.

## III. In the alternative, Defendants are entitled to an adverse inference jury instruction based on Plaintiffs' spoliation.

Plaintiffs had a duty to begin preserving evidence as soon as they anticipated litigation, which Plaintiffs have claimed they anticipated as early as June 2020. (SOF 2.) If the Court determines to enter sanctions at a lesser level than default judgment, at the very least an adverse inference jury instruction should be entered, in which case the jury should be instructed that Plaintiffs deleted relevant evidence that would have been harmful to Plaintiffs' case and would have supported Defendants defenses.

"The adverse inference rule provides that when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *Vitamins Online, Inc. v. HeartWise, Inc*, No. 2:13-CV-00982-DAK, 2020 WL

6581050, at *15 (D. Utah Nov. 10, 2020) (cleaned up) (hereafter "*Vitamins I*"), aff'd and remanded sub nom. *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222 (10th Cir. 2023) (hereafter "*Vitamins II*"). If the adverse inference is applied, it should be applied "to each element of [a plaintiff's] claims and assume that the evidence [the plaintiff] failed to preserve and produce was unfavorable to it." *Vitamins I*, 2020 WL 6581050, at *15, aff'd and remanded sub nom. *Vitamins II*, 71 F.4th 1222 (10th Cir. 2023).

Here, Peter Hicks anticipated litigation by June 4, 2020, and he has withheld a document with that date in this litigation on the basis of the work product doctrine (i.e., anticipation of litigation). At that time, there were less than two months of relevant texts between himself and Lucas Hicks, and his duty to preserve those texts began by that time. Thus, he had relevant evidence in his control. However, Peter failed to preserve that evidence, and in fact he intentionally deleted that evidence. This intentional deletion was in bad faith. Peter Hicks's failure to preserve relevant texts, and to produce them to Defendants, gives rise to an inference that the evidence is unfavorable to Plaintiffs.

## **CONCLUSION**

Based on Plaintiffs' bad faith actions, this Court should enter terminating sanctions against Plaintiffs. In the alternative, the Court should apply the requested adverse inference against Plaintiffs.

DATED: November 8, 2024.

**HATCH LAW GROUP, PC**

By: */s/ Adam M. Pace*
Brent O. Hatch
Adam M. Pace

*Counsel for Defendants*

## **CERTIFICATION**

I, Adam M. Pace, certify that this motion contains 3,828 words and complies with the Court's grant of leave to file an overlength motion of up to 3,850 words (*see* ECF No. 132).

By: *<u>/s/ Adam M. Pace</u>*