Erik A. Christiansen, USB #7372
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
EChristiansen@parsonsbehle.com
ecf@parsonsbehle.com

Christopher Robertson (*pro hac vice*)
**SEYFARTH SHAW LLP**
Seaport East
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone: 617-946-4989
Facsimile: 617-790-6774
crobertson@seyfarth.com

*Attorneys for Plaintiffs PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| PETER HICKS; HICKS, LLC; and WASATCH HICKS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TREVOR R. MILTON; M&M RESIDUAL, LLC; and T&M RESIDUAL, LLC,<br><br>Defendants. | **RESPONSE TO MOTION FOR SPOLIATION SANCTIONS RE: PLAINTIFFS' INTENTIONAL DESTRUCTION OF EVIDENCE**<br><br>Case No. 2:22-cv-00166<br><br>Judge: Hon. Howard C. Nielson, Jr<br><br>Magistrate Judge: Hon. Daphne A. Oberg |

# TABLE OF CONTENTS


RELIEF SOUGHT AND GROUNDS THEREFORE .......... 1

RELEVANT FACTS .......... 2

AUTHORITY .......... 5

ARGUMENT .......... 5

A. Peter's Duty to Preserve Evidence Began Far After June 4, 2020 .......... 6

B. Defendants Have Not Been Prejudiced .......... 7

a. All of the missing text messages were obtained from another source .......... 7

b. Alleged text messages regarding Peter's knowledge of Milton's misrepresentations are irrelevant .......... 11

C. Defendants Offer No Evidence Of Bad Faith .......... 11

CONCLUSION .......... 14

WORD LIMIT CERTIFICATE .......... 15

Pursuant to Federal Rule of Civil Procedure 37(e), Plaintiffs Peter Hicks ("**Peter**"), Hicks, LLC ("the **LLC**"), and Wasatch Hicks, LLC (collectively, "**Plaintiffs**") hereby submit this response to the Motion for Spoliation Sanctions re: Plaintiffs' Intentional Destruction of Evidence (ECF 135) (the "**Motion**") filed by Defendants Trevor Milton ("**Milton**"), M&M Residual, LLC, and T&M Residual, LLC's (collectively, "**Defendants**").[1]

**<u>RELIEF SOUGHT AND GROUNDS THEREFORE</u>**

Trevor Milton has been criminally convicted of defrauding Peter in connection with the sale of the Wasatch Creeks Ranch (the "**Ranch**"). Nevertheless, Milton now seeks case-terminating sanctions under Rule 37(e) because a limited number of text messages between Peter and his son, Lucas, were missing from Peter's phone. The Motion should be denied for several reasons.

First, Defendants have suffered no prejudice. Despite its bluster, the Motion fails to identify a single missing text message that Defendants were unable to recover from Lucas, who

---

[1] Defendants filed a motion for the alleged loss of electronically stored information, *i.e.*, text messages, without citing to, or abiding by, Federal Rule of Civil Procedure 37(e) and/or DUCivR 37-1. Upon filing such a motion, Defendants had two obligations under our local rules (which they did not meet):

First, Defendants were required to make "reasonable efforts to resolve [the dispute] . . . before seeking court assistance." DUCivR 37-1(a)(1). The Motion should have included a meet and confer certification as provided under DUCivR 37-1(b)(2)(A). This certification was not included, because there was no conference.

Second, Defendants should have filed a short form discovery motion "no later than 45 days after the prompt written communication in section 37-1(a)(2) was sent to opposing counsel, unless the court grants an extension of time for good cause." DUCivR 37-1(b)(2)(C). It is unclear if a written communication regarding the matter was ever sent, or if it was, when it was sent—Plaintiffs have certainly known about the missing text messages for many months. This is particularly important because "[f]ailure to meet the deadline may result in automatic denial of the motion." DUCivR 37-1(b)(2)(C).

Given Defendants' failure to abide by the Court's local rules, including the submission of a certification that allows the Court to determine whether the Motion is timely, the Court should deny the Motion.

made a robust production in response to Defendants' third-party subpoena. Unable to identify even one missing text message they were unable to obtain from Lucas, Defendants are left to brazenly speculate about other unidentified missing text messages. But Defendants' conjecture is no substitute for actual evidence.

Second, there is no evidence of bad faith. Peter did not intentionally delete any information from his phone. Defendants—and their expert—speculate about what happened to the missing text messages, including how they came to be missing and when they came to be missing. Not even Peter, a 73-year-old man with limited knowledge about cell phone technology, knows how the text messages went missing. But Peter is certain he did not intentionally delete anything from his phone. And there is no evidence from which any inferences can be made that he did.

Moreover, if there was some conspiracy to hide information from Defendants, then Peter would have told his son to similarly delete messages, which did not happen. Instead, Peter provided his computer, email account, and cloud-based storage accounts for inspection, resulting in the production of over 13,000 documents. Further, Peter provided access to the complete forensic collection of his cell phone to Defendants' expert consisting of approximately 34,000 communications. Defendants' request for case-terminating sanctions is an overreach and legally inappropriate.

## RELEVANT FACTS

**Milton is Convicted of Defrauding Peter**

1. On August 14, 2020, Plaintiffs and Milton finalized a transaction wherein Milton paid $8.5 million and granted Peter the option to purchase up to 515,095 shares of Nikola, in exchange for the Ranch.

2. On September 10, 2020, the Hindenburg Report was published, accusing Milton of making material misrepresentations about Nikola's technology and business, causing Nikola's stock price to plummet.

3. On July 29, 2021, Milton was indicted for securities fraud and wire fraud. The United States Attorney later filed a Superseding Indictment—adding a Count Four against Milton for criminal wire fraud related to his purchase of the Ranch.

4. The jury convicted Milton on multiple counts, including Count Four; Milton was sentenced to four years in prison and ordered to forfeit the Ranch.

5. Plaintiffs moved for summary judgment three months later, on the grounds that Milton's criminal conviction conclusively establishes his civil liability under the doctrine of collateral estoppel. (ECF 80).

**Peter and Lucas Produced Substantial Discovery**

6. In this case, which was filed on March 14, 2022, Defendants issued document requests to Peter and also served a subpoena on Lucas. (Affidavit of Christopher Robertson at ¶ 4, attached as Exhibit 1)

7. Peter responded to the document requests by producing a substantial volume of emails and texts. (*Id.* at ¶¶ 5, 11).

8. Additionally, Peter notified Defendants' counsel that, after a manual review of his phone, he was unable to recover certain text messages, including texts between him and Lucas before July 2021. (*Id.* at ¶ 8).

9. After further discussion with counsel, Peter offered to make his phone and computer available for inspection. (*Id.* at ¶ 9).

10. Ultimately, the phone and laptop were provided to Defendants' eDiscovery vendor to ensure that any available information could be recovered. (ECF 65).

11. All told, based on the review protocol agreed to by the parties, Peter produced over 13,000 documents. (Robertson Aff. at ¶ 11).

12. Moreover, Lucas produced texts and emails from his phone, laptop, and mailbox, including texts that were missing from Peter's phone between April 2020 through July 2021. (Affidavit of Lucas Hicks at ¶¶ 3-4, attached as Exhibit 2).

13. At no point in time did Lucas delete any text messages between him and Peter, nor did Peter ever ask Lucas to delete any text messages, or any other communications, between Peter and Lucas. (Lucas Aff. at ¶¶ 5-6; Affidavit of Peter Hicks at ¶ 7, attached as Exhibit 3).

**Defendants' Expert is Forced to Submit Second Report After Flawed Initial Report**

14. Defendants initially served the expert report of Scott Tucker, in which Tucker opined that Peter likely deleted text messages on his cell phone between him and Lucas, and that an audio recording of a telephone call between Lucas, Peter, and Milton, could be a "deep fake."

15. Tucker's first report also included a list of 183 text messages between Peter and Lucas that he opined were not located on Peter's phone but were discovered on Lucas's phone. (Robertson Aff. at ¶ 16, Ex. 1).

16. But he was wrong; in fact, more than a dozen of those text messages *were* located on Peter's phone. (*Id.*)

17. Likely recognizing the foundational errors in his first report, Tucker submitted a "supplemental" report.

18. Tucker acknowledged that the list of text messages in his first report was inaccurate. (*Id.* at Ex. E, Tucker Dep. Tr. at 48:15–18).

19. Tucker also acknowledged that he had received the list from Defendants' counsel, but that he had done nothing to independently confirm the accuracy of the list. (*Id.* at 10:10-11:20).

20. Likewise, Tucker admitted that he did not evaluate whether the texts hit on search terms, nor did he analyze whether the texts that were produced by Lucas captured those documents that were missing from Peter's phone. (*Id.* at 56:18–58:1).

**AUTHORITY**

> If electronically stored information that [1] should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and [2] it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

**ARGUMENT**

Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence. *Moreno v. Taos Cnty. Bd. of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014).

Federal Rule of Civil Procedure 37(e) outlines the circumstances required to impose sanctions for the spoliation of electronically stored information ("**ESI**"). Under Rule 37(e)(1), the Court may issue sanctions "no greater than necessary" to cure any prejudice caused by the failure to preserve ESI such as where the ESI "cannot be restored or replaced through additional

discovery." Under Rule 37(e)(2), the Court may order an adverse inference or dismiss the action "only upon finding that the party acted with the intent to deprive another party of the information's use in litigation[.]"

Defendants, as the moving party, bear the burden of proving, by a preponderance of evidence, that spoliation sanctions are appropriate. *See Rains v. Westminster Coll.*, 2023 WL 2894506, at *3 (D. Utah April 11, 2023).

**A. Peter's Duty to Preserve Evidence Began Far After June 4, 2020**

Defendants first argue that Peter's duty to preserve evidence began on June 4, 2020—months before the Ranch transaction closed and even longer before the publication of the Hindenburg Report—solely based on an entry on a privilege log that (mistakenly) indicated that a document had been redacted under the attorney work-product doctrine based on Plaintiffs' anticipation of litigation. Defendants' argument is not advanced in good faith.

First, the redacted document in question, and the resulting entry on the privilege log, was clearly a mistake. In fact, the same email, including many other emails in the same email thread, were subsequently produced in the litigation, without redaction, showing that the communication had nothing to do with litigation. Robertson Aff. ¶ 15, Ex. 1. Through minimal investigation, Defendants should have known that the entry on the privilege log was a mistake, yet they raised no concerns with Plaintiffs or the Court regarding the entry, or the redactions to the document, at the time. Instead, Defendants waited to spring the issue for the first time in the Motion, in an obvious attempt to extend the time period during which they could claim Peter had a duty to preserve. *Id.*

Moreover, Defendants' argument is nonsensical. There is no reason why Peter would have anticipated litigation before the Ranch transaction even closed in August 2020, or before he knew he had suffered losses upon the release of the Hindenburg Report and subsequent expiration of the

Option at the end of 2020. The duty to preserve evidence arises only when a litigant knows or should know that litigation is "imminent." *Rains*, at *2. "For future litigation to be considered imminent, there must be more than a mere possibility of litigation." *Strand v. USANA Health Sciences, Inc.*, 2020 WL 13889837, at *2 (D. Utah June 26, 2020) (quotation marks omitted). Other than the erroneous privilege log entry, Defendants point to no other evidence showing that litigation was imminent in June 2020, nor can they. *Id.* And, of course, this lawsuit was not filed until March 2022.

### B. Defendants Have Not Been Prejudiced

The Court need not grapple with when Peter's duty to preserve arose because Defendants have failed to meet their burden to show any prejudice. The determination of whether a party seeking spoliation sanctions has been prejudiced turns on the specific facts of the case, and relevance is a necessary component of proving such prejudice. *Ward v. Nesibo*, 2023 WL 8261670, at *2 (D. Utah Nov. 29, 2023). "It is not enough for a party seeking spoliation sanctions to raise an issue of theoretical prejudice, *i.e.*, that prejudice cannot be known because the documents and information no longer exist." *Id.* Rather, a party must present evidence of actual prejudice; "when a non-spoliating party has other sources of information . . . courts have found that there is no actual prejudice." *Id.* Moreover, the 2015 Advisory Committee Notes to Rule 37 recognize that "[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."

#### a. All of the missing text messages were obtained from another source

Here, all the missing text messages "existed in multiple locations," and were, in fact, recovered from another location: Lucas's cell phone. Defendants acknowledge that they received 140 text messages from Lucas's phone. And importantly, they offer no evidence that any additional, relevant text messages exist and were not produced. The most Defendants can muster

is an allegation that *Lucas* did not conduct a diligent search for relevant documents because, according to text messages recovered from *Peter's* phone, Lucas allegedly withheld "at least two relevant text messages." (Motion at 9).[2] But that simply shows that, between Peter's phone, computer, email, and Lucas's phone, Defendants have received extensive communications from multiple sources regarding Peter's alleged awareness of Nikola's SEC filings. Defendants' ability to obtain the missing text messages from Lucas's phone is, alone, grounds to deny the Motion. *See, e.g.*, *Ward*, at *2 (party seeking spoliation sanctions could not show prejudice where it had other sources of information for a destroyed piece of evidence).

Defendants' conjecture that there must be other missing text messages showing that Peter "knew" Milton was lying to him is exactly the type of speculative prejudice that courts have repeatedly found to be an insufficient basis to order sanctions. There is no evidence whatsoever that Lucas deleted any text messages from Peter, or that he did not produce all relevant text messages after a reasonable and diligent search. *See* Lucas Hicks Aff. at ¶¶ 4–7. Thus, there is no basis to find that additional missing and unproduced text messages exist. "Hopeful speculation provides neither a basis to find that spoliation occurred nor to impose sanctions." *Strand*, at *3. *See also Phillip M. Adams & Assocs., LLC v. Winbond Electronics Corp.*, 2010 WL 2977228, at *1 (D. Utah July 21, 2010) ("The fact that evidence is not present does not mean it was spoliated."). Indeed, Defendants' expert acknowledged that he could not identify any relevant text messages that were not produced by either Peter or Lucas. Tucker Dep. Tr. at 43:1–44:5.

Defendants' expert also overstates the number of potentially relevant text messages that were not produced because they were deleted. Performing some simple "back of the napkin" math,

---

[2] These "two relevant text messages" consisted of only links to public filings without any commentary by either Lucas or Peter.

Tucker estimates that Peter may have deleted between 800 and 1,100 text messages between April 1, 2020 and March 5, 2021. (Motion at 9). But there are several problems with Tucker's approach.

First, as demonstrated above, April 1, 2020 is not the date Peter's duty to preserve began; it was much later, and therefore the estimated number of deleted text messages would be far less, even accepting Mr. Tucker's methods. Second, Mr. Tucker does not consider whether any of those text messages are actually relevant to this dispute. For example, as part of discovery, the parties conferred on a list of mutually agreeable search terms to run through various sources of ESI, and then to review those documents for relevance and privilege. Robertson Aff. ¶¶ 10–11. Tucker admits he did not undertake a similar review to test the relevance of any of the purported 1,000 deleted text messages. Tucker Tr. at 55:18-58:1. There is no duty to preserve irrelevant information, so Tucker's estimated number of deleted text messages—without any determination that any of the messages are relevant to this dispute—tells the Court nothing.[3]

Unable to point to any evidence that additional unproduced, relevant text messages exist, Defendants are left to request an "adverse inference" that Lucas somehow "held back" text messages because his counsel instructed him not to answer certain questions during his deposition after asserting his Fifth Amendment rights. (Motion at 9). No such inference is warranted. First, Defendants grossly misrepresent Lucas's testimony when they suggest he was instructed by his attorney not to answer "whether additional text messages were not provided." (Motion at 4, citing Lucas Dep. Tr. 146:18–24). Defendants' counsel asked Lucas whether there are text messages

---

[3] Plaintiffs, on the other hand, performed such an analysis. Of the text messages in Exhibit D to Tucker's supplemental report sent between March 2021 and December 2023, *3,531 out of 3,598* were identified as "outside search term results" and only 67 messages contained search term hits. Robertson Aff. ¶ 17. Following Tucker's own logic, only approximately 22 potentially relevant messages would have been sent between Peter and Lucas between April 2020 and March 2021 (*i.e.*, text messages that hit on search terms). Lucas produced far more than 22 messages during that time period, meaning it is unlikely any relevant text messages were not produced.

between him and Peter "talking about the recording that you took of that April 11, 2020 [phone call]." Lucas's attorney instructed Lucas not to answer. Defendants' counsel then asked, again, whether "there were text messages that weren't provided *on the basis of that privilege then*." (*Id. at 146*:18–20) (emphasis added). Lucas's counsel again instructed him not to answer. Lucas was never asked, and therefore never testified, that additional text messages, generally, were not produced in response to the subpoena. The objection was specifically limited to whether text messages about the phone call were withheld from production based on his assertion of the Fifth Amendment. If Defendants believed that Lucas improperly withheld documents based on his Fifth Amendment assertion (or otherwise should have answered their deposition questions), then their recourse was to seek an order compelling production or further testimony.

But Defendants never did. "Before an adverse inference may be drawn" due to a witness's invocation of the Fifth Amendment, "the court is required to determine whether there is a valid basis for the witness's invocation of the privilege." *Lehtonen v. Gateway Companies, Inc.*, 2007 WL 9733695, at *4 (D. Nev. May 7, 2007) ("Gateway 'jumped the gun' by not first moving to compel the witnesses' testimony to determine whether they properly invoked their Fifth Amendment rights before seeking an adverse inference instruction."); *Prime Media Grp., LLC v. Acer Am. Corp.*, 2015 WL 527836, at *3 (N.D. Cal. Feb. 6, 2015) (refusing to grant adverse inference for invocation of Fifth Amendment privilege where party did not first seek to compel answers to deposition questions). Defendants (in an apparent deliberate strategy) have likewise "jumped the gun" by requesting an adverse inference before seeking a determination whether Lucas's invocation of the Fifth Amendment was proper. *Cf. Rains*, at *7 ("Ms. Rains should have raised this claim in a motion to compel rather than a motion seeking sanctions. Where she failed to do so, this dispute was not fully developed, and sanctions are unwarranted.").

Second, Defendants repeatedly sought to take additional discovery from Lucas's phone and both this Court and the United States District Court for the Southern District of New York have refused to order any further production by Lucas. *See* ECF 48; *Hicks v. Milton*, Case No. 23-mc-0195 (S.D.N.Y. July 6, 2023), ECF 29. In other words, both courts have already concluded that Lucas's production was both appropriate, and sufficient, and that Defendants were not entitled to any additional documents. Having twice failed to persuade courts that Lucas's production was deficient, Defendants should not now be permitted to obtain an adverse inference that he somehow failed to produce relevant text messages.

**b. Communications regarding Peter's knowledge of Milton's misrepresentations are irrelevant**

Defendants also cannot show any prejudice because any missing text messages are irrelevant to this dispute in light of the criminal conviction against Milton. Defendants argue that their "main defense in this case is that any reliance placed on the alleged statements of Defendant Milton was not reasonable, in part because [Peter] was fully aware of the SEC filings which fully disclosed the current, pre-revenue status of Nikola and its projects." (Motion at 8). But Milton already pressed that argument in the criminal case, and lost.

As stated more fully in Plaintiffs' Reply in Support of Motion for Summary Judgment as to Liability, Milton actually litigated Peter's reliance on his misrepresentations in the criminal case. *See* ECF 125, at 8–9. Because Defendants are collaterally estopped from relitigating Peter's reliance on Milton's misrepresentations, any text messages that allegedly establish his awareness of Nikola's SEC filings are irrelevant.

### C. Defendants Offer No Evidence Of Bad Faith

Defendants ask this Court for case-terminating sanctions, despite offering no evidence that Peter intentionally deleted any text messages or intended to deprive Defendants of discovery. The

entry of default judgment or the imposition of adverse inferences require a showing of bad faith. Mere negligence in losing or destroying evidence "is not enough to support imposition of either of these harsh sanctions." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015); *see also* FED. R. CIV. P. 37(e)(2) ("only upon finding that the party acted with the intent to deprive another party of the information's use in litigation may" a court order an adverse inference or case-terminating sanctions).

Notwithstanding their healthy use of bold and underlined text, Defendants' repeated allegation that Peter "intentionally" deleted text messages is nothing more than *ipse dixit*. There is not a shred of evidence that Peter intentionally deleted anything. *See* Peter Hicks Aff. ¶¶ 2–7; Hicks Dep. Tr. at 99:11-13. Again, without any actual evidence of bad faith, Defendants are forced to argue that Plaintiffs "stonewalled" Defendants' efforts to obtain discovery in the case. (Motion at 10). Not surprisingly, Defendants cite to no legal authority substituting a party's good faith objections to discovery requests for actual evidence of bad faith. Further, Defendants retelling of the history of discovery in this case is fiction, even going so far as to accuse Plaintiffs of "violat[ing] a Court order," despite pointing to no finding that such a violation occurred. (Motion at 11). *See* Robertson Aff. ¶ 14. In fact, Peter produced over 13,000 documents and subjected his phone to a full forensic review. *See Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1150 (10th Cir. 2009) (though employer lost pertinent employment records, defendant's production of multiple other documents undermined any inference of bad faith). No court has made any findings of bad faith by Plaintiffs in opposing Defendants' burdensome discovery requests and, in fact, as many of Defendants' discovery motions were denied as were granted.

Moreover, Defendants cannot show any intent by Peter to deprive them from obtaining the text messages. If Peter truly wanted to hide communications with Lucas as part of some grand



**Error! Unknown document property name.**

scheme to prevent Defendants from using the communications in this litigation, then he would have instructed his son to likewise delete the text messages from his phone and would have deleted similar emails. That did not happen. Peter Hicks Aff. ¶ 7; Lucas Hicks Aff. ¶ 6. In fact, both here, and in the criminal case, Milton has attempted (although unsuccessfully) to use many of Peter's communications as part of his defense.

Lastly, Defendants' request for case-terminating sanctions strains credulity. To begin with, due to the strong preference to resolve suits on their merits, entry of judgment based on a spoliation motion represents "an extreme sanction" which should be used as "a weapon of last, rather than first, resort." *Amann v. Off. of Utah Att'y Gen.*, 2023 WL 7218696, at *2 (D. Utah Nov. 2, 2023) (citations omitted). For all these reasons, none of the so-called *Ehrenhaus* factors warrant case-terminating sanctions, or any sanction at all.

This needs to be considered against the backdrop of the criminal case, wherein a jury found Milton guilty, *beyond a reasonable doubt*, of defrauding Peter. Milton is not the victim here; he is the perpetrator. This last-ditch attempt, which was brough to distract from that fact, well after the close of discovery and without conferring with Plaintiffs, should not be rewarded.

## CONCLUSION

Therefore, the Court should deny the Motion.

DATED December 31, 2024.

/s/ *Erik A. Christiansen*
Erik A. Christiansen
PARSONS BEHLE & LATIMER

Christopher Robertson (*pro hac to be filed)*
SEYFARTH SHAW LLP

Attorneys for Plaintiff PETER HICKS, HICKS, LLC, and WASATCH HICKS, LLC

## WORD LIMIT CERTIFICATE

I, Erik A. Christiansen, certify that this **RESPONSE TO MOTION FOR SPOLIATION SANCTIONS RE: PLAINTIFFS' INTENTIONAL DESTRUCTION OF EVIDENCE** contains 4,029 words and complies with DUCivR 7-1(a)(4) and the Court's Order granting leave for Plaintiffs to file an overlength motion of up to 4,100 words.

*/s/ Erik A. Christiansen*
Erik A. Christiansen

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 31, 2024, I caused a true and correct copy of the foregoing document to electronically filed with the Court which served the parties of record:

Brent O. Hatch
H. Douglas Owens
Adam M. Pace
HATCH LAW GROUP
22 E 100 S STE 400
SALT LAKE CITY, UT 84111
801-869-1919
hatch@hatchpc.com
owens@hatchpc.com
pace@hatchpc.com

Curtis Tuttle
CURTIS M. TUTTLE PLLC
1496 S 1500 E
BOUNTIFUL, UT 84010
435-253-0378
Ctuttle@cmtpllc.com

*Attorneys for Defendants*

*/s/ Alex Vandiver*
Alex Vandiver