UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PETER HICKS; HICKS, LLC; and WASATCH HICKS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TREVOR R. MILTON; M&M RESIDUAL, LLC; and T&M RESIDUAL, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SPOLIATION SANCTIONS WITHOUT PREJUDICE**<br><br>Case No. 2:22-cv-00166<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Peter Hicks; Hicks, LLC; and Wasatch Hicks, LLC filed this action against Trevor R. Milton; M&M Residual, LLC; and T&M Residual, LLC, in relation to a transaction between the parties.[1] Plaintiffs sold a Utah ranch property to Defendants in exchange for money and stock options in Nikola Corporation—a transportation company founded and formerly run by Mr. Milton.[2] After Mr. Milton was indicted in 2021 for securities and wire fraud for statements he made about Nikola,[3] Plaintiffs filed suit, alleging Mr. Milton

---

[1] (*See* Compl., Doc. No. 2.)

[2] (*See id.* at 2.)

[3] *See United States v. Milton*, No. 21-cr-00478, 2024 U.S. Dist. LEXIS 32501, at *1 (S.D.N.Y. Feb. 26, 2024) (unpublished).  After being convicted on one count of securities fraud and two counts of wire fraud, Mr. Milton was sentenced to four years in prison in 2023.  *See id.*  Then, in March 2025, President Donald J. Trump pardoned Mr. Milton.  *See* Executive Grant of Clemency (Mar. 27, 2025), available at https://www.justice.gov/pardon/media/1395001/dl?inline [https://perma.cc/MD87-9FSY].

fraudulently induced them into the property transaction through false and misleading statements about Nikola.[4]

On the deadline to file dispositive motions, Defendants moved for spoliation sanctions, contending Peter Hicks intentionally deleted relevant text messages between him and his son, Lucas Hicks.[5] As a sanction for this alleged spoliation, Defendants seek default judgment or, in the alternative, an adverse jury instruction.[6] While Plaintiffs acknowledge text messages are "missing from Peter's phone," they argue Defendants have presented no evidence showing Peter intentionally deleted the messages.[7] Plaintiffs also argue Defendants have suffered no prejudice because Lucas produced the lost messages to Defendants.[8] Both parties' arguments rely heavily on witness testimony, including an expert opinion.

Because the parties raise factual disputes and credibility questions more appropriate for resolution by a jury, it makes little sense to decide at this stage whether spoliation occurred or sanctions are warranted. Accordingly, Defendants' motion for

---

[4] (*See* Compl. 2–5, Doc. No. 2.)

[5] (*See* Mot. for Spoliation Sanctions Re: Pls.' Intentional Destruction of Evid. (Mot.) 1–2, Doc. No. 135.) The court held a hearing on the motion on June 23, 2025. (*See* Min. Entry, Doc. No. 163.)

[6] (Mot. 1–2, Doc. No. 135.) Because Peter and Lucas have the same last name, first names are used in this order, for clarity.

[7] (Resp. to Mot. for Spoliation Sanctions Re: Pls.' Intentional Destruction of Evid. (Opp'n) 1–2, 11–13, Doc. No. 151.)

[8] (*Id.* at 1–2, 7–11.)

sanctions is denied without prejudice. The spoliation issue may instead be raised at trial, if permitted by the district judge.

## LEGAL STANDARDS

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[9] Rule 37(e) of the Federal Rules of Civil Procedure governs sanctions for spoliation of electronically stored information (ESI). Pursuant to Rule 37(e), ESI spoliation occurs when 1) a party has a duty to preserve the evidence, 2) the ESI "is lost because a party failed to take reasonable steps to preserve it," and 3) it "cannot be restored or replaced through additional discovery."[10] If spoliation has prejudiced the moving party, the court "may order measures no greater than necessary to cure the prejudice."[11] More severe sanctions, such as dismissal or an adverse jury instruction, may be imposed only if the nonmovant also "acted with the intent to deprive another party of the information's use in the litigation."[12]

---

[9] *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1194–95 (D. Utah 2011) (citation modified).

[10] Fed. R. Civ. P. 37(e).

[11] Fed. R. Civ. P. 37(e)(1).

[12] Fed. R. Civ. P. 37(e)(2).

## BACKGROUND

During fact discovery, Defendants asked Plaintiffs to produce communications between Peter and Lucas relating to the property transaction.[13] Before Plaintiffs responded to the discovery request, Defendants served a subpoena on Lucas (who is not a party to this case) in New York, requesting communications between Lucas and Peter.[14] After Lucas objected to the subpoena on Fifth Amendment and privilege grounds, Defendants filed a motion to compel Lucas to respond.[15] In an oral ruling, the Southern District of New York granted Defendants' motion in part and ordered Lucas to produce responsive messages.[16] Lucas then produced some relevant messages.[17]

In response to Defendants' discovery request in this district, Plaintiffs objected that the discovery sought was duplicative of Defendants' subpoena to Lucas.[18] Plaintiffs also objected that Defendants' request failed to include a time frame.[19] Plaintiffs later submitted a supplemental response stating: "Plaintiffs cannot produce any text messages between Peter Hicks and Lucas Hicks exchanged prior to 2021,

---

[13] (Mot. 2–3, Doc. No. 135.)

[14] (*Id.* at 3.)

[15] (*Id.*)

[16] (*See id.*)

[17] (*See id.*)

[18] (*See* Ex. 1 to Short Form Disc. Mot. to Compel Resps. to Defs.' Reqs. for Produc., Suppl. Resp. to Defs.' First Set of Disc. Reqs. to Pls. 29, Doc. No. 51-1.)

[19] (*Id.* at 28–29.)

because Plaintiffs do not possess those text messages.  After a thorough search of [Peter's] phone, Plaintiffs have confirmed no texts between Plaintiffs and Lucas Hicks exist prior to July 2021."[20]  Plaintiffs further stated "it appears the text messages that may have existed in 2020 are privileged attorney-client communications and/or privileged attorney work product."[21]

Shortly after receiving Plaintiffs' supplemental response, Defendants filed a motion to compel Plaintiffs to produce responsive documents, taking issue with Plaintiffs' position on the time frame issue.[22]  Defendants also sought to compel a forensic examination of Plaintiffs' electronic devices and email accounts, arguing discovery from the subpoena to Lucas showed Plaintiffs' production was incomplete.[23] In response, Plaintiffs reiterated their time frame objection and contended "the circumstances of this lawsuit [arose] three years ago," and Peter "has since changed his phone and, in the process, lost text messages exchanged with Lucas."[24]  The court granted Defendants' motion in part and ordered Plaintiffs to produce responsive

---

[20] (*Id.* at 30.)

[21] (*Id.*)

[22] (*See* Short Form Disc. Mot. to Compel Resps. to Defs.' Reqs. for Produc. 2, Doc. No. 51.)

[23] (*See id.* at 2–3.)

[24] (Opp'n to Defs.' Short Form Disc. Mot. to Compel Resps. for Produc. 4 n.16, Doc. No. 52.)

documents from a specified time frame.[25] The court also ordered Plaintiffs to produce their devices for forensic examination, "based on discrepancies between the documents produced by Peter Hicks and Lucas Hicks, as well as Plaintiffs' claim that certain responsive text messages are no longer available on Peter Hicks' phone."[26]

Peter did not produce any new texts in response to the order, but the forensic scan of Peter's phone identified texts between Lucas and Peter from March 2021 to July 2021—apparently contradicting Peter's insistence that he did not have any texts with Lucas on his phone from before July 2021.[27] However, the forensic examination did not identify any text messages between Peter and Lucas between April, 8, 2020 and March 2, 2021—despite the fact that Lucas produced responsive texts from this time period.[28] In a subsequent deposition, Peter testified those messages could have been lost when he replaced his phone after dropping it on the beach.[29]

Based on the alleged discrepancies between the texts Lucas produced, the forensic examination of Peter's devices, and Peter's explanations for the missing messages, Defendants argue Peter intentionally deleted all his texts with Lucas pre-

---

[25] (Order Granting in Part and Den. in Part Defs.' Short Form Disc. Mot. to Compel Resps. to Defs.' Reqs. for Produc. 4, Doc. No. 65.)

[26] (*Id.* at 4–5.)

[27] (Mot. 1, Doc. No. 135.)

[28] (*See id.* at 5–6.)

[29] (*See* Ex. 3 to Mot., Dep. of Peter Hicks 93:4–100-5, Doc. No. 135-3.)

dating March 5, 2021.[30] Defendants rely heavily on the expert opinion of Scott Tucker, who opines "Peter's explanations are implausible, and the only explanation for the loss of selected text messages on Peter's phone (i.e., texts between Lucas and Peter) is that they were intentionally deleted."[31]

Defendants also argue the loss of the messages is prejudicial because their "main defense in this case is that any reliance placed on the alleged statements of Defendant [Mr.] Milton was not reasonable, in part because [Peter] was fully aware of the SEC filings which fully disclosed the current, pre-revenue status of Nikola and its projects."[32] Because some of the messages Lucas produced (but Peter allegedly deleted) contain SEC filings, news articles about Nikola, and related discussions, Defendants contend Peter may have deleted other messages relevant to their defense.[33] This argument also relies on Mr. Tucker's expert opinion.[34]

Defendants further contend Lucas's production does not cure any prejudice, because the forensic scan of Peter's phone revealed at least two relevant messages

---

[30] (*See* Mot. 1–2, 6–8, Doc. No. 135.)

[31] (*Id.* at 6; *see also id.* at 1–2, 6–7, 9 (relying on Mr. Tucker's expert opinion); Reply in Supp. of Mot. for Spoliation Sanctions Re: Pls.' Intentional Destruction of Evid. (Reply) 1–3, 8, Doc. No. 157 (same).)

[32] (Mot. 8, Doc. No. 135; *see also id.* at 6, 8–11 (making same argument).)

[33] (*See id.* at 8–9.)

[34] (*See id.* at 9 (arguing "Defendants' defense is prejudiced" because "[Mr.] Tucker estimates that Peter would have deleted between 800 and 1,100 texts").)

Lucas failed to produce.[35]  In a similar vein, Defendants argue that "in his deposition, Lucas took the Fifth Amendment as to whether he turned over every text message, strongly indicating that Lucas held back many additional texts of which Defendants are not even aware."[36]

In response,[37] Plaintiffs argue Defendants offer no evidence showing Peter deleted any texts intentionally or in bad faith.[38]  In support of this argument, Plaintiffs substantively challenge the methodology Mr. Tucker used in his expert opinion to estimate how many messages were lost.[39]  Plaintiffs also take issue with Defendants' characterization of Lucas's deposition testimony regarding his production of

---

[35] (*See* Mot. 1, 3, 9–11, Doc. No. 135.)

[36] (*Id.* at 9.)  This argument is the subject of Defendants' objection to Plaintiffs' pending motion for summary judgment, which Defendants incorporated in their motion for sanctions.  (*See id.* at 9 n.3 (incorporating Obj. to Pls.' Exs. 2 and 3, Doc. No. 115).)

[37] As their first line of defense, Plaintiffs argue in a footnote that Defendants failed to comply with Local Rule 37-1's conferral requirements for short form discovery motions.  (*See* Opp'n 1 n.1, Doc. No. 151); DUCivR 37-1.  But Plaintiffs offer "no support for applying Local Rule 37-1's meet-and-confer requirement to motions for sanctions based on alleged failure to comply with prior court orders or spoliation."  *Martin v. SGT, Inc.*, No. 2:19-cv-00289, 2022 U.S. Dist. LEXIS 232888, at *22 (D. Utah Dec. 28, 2022) (unpublished).  In any event, the parties' years-long war over the text messages—including multiple discovery motions in Utah and New York—"leads the court to conclude that no fruitful resolution would ensue from further conferral between the parties absent court assistance."  *Id.* at *23.

[38] (Opp'n 11–13, Doc. No. 151.)

[39] (*Id.* at 8–9; *see also id.* at 4–5 (questioning Mr. Tucker's expert report).)

messages.[40]  Instead, Plaintiffs urge the court to rely on affidavits from Peter and Lucas, attesting Peter did not intentionally delete messages.[41]

Additionally, Plaintiffs argue Defendants have not shown prejudice, where Defendants recovered "all the missing text messages" from Lucas.[42]  Relatedly, Plaintiffs contend Defendants are collaterally estopped from asserting their defense that reliance on Mr. Milton's statements was unreasonable—because Mr. Milton "already pressed that argument in the criminal case, and lost."[43]  In Plaintiffs' view, where collateral estoppel precludes this defense, the loss of messages related to that defense cannot prejudice Defendants.[44]

---

[40] (*See id.* at 9–10 ("Defendants grossly misrepresent Lucas's testimony . . . . Lucas was never asked, and therefore never testified, that additional text messages, generally, were not produced in response to the subpoena.").)

[41] (*See* Exs. 2–3 to Opp'n, Affs. of Lucas Hicks and Peter Hicks, Doc. Nos. 151-2 & 151-3.)  The parties also dispute the date by which Peter had a duty to preserve.  Defendants contend the duty to preserve arose on June 4, 2020, because Plaintiffs previously asserted work product protection for a document dating June 4, 2020.  (*See* Mot. 7–8, Doc. No. 135.)  Although Plaintiffs do not offer an alternative date, they argue the work product assertion was "clearly a mistake," and "Peter's duty to preserve evidence began far after June 4, 2020."  (Opp'n 6, Doc. No. 151.)  But elsewhere in this case, Plaintiffs acknowledged Peter anticipated this lawsuit by at least mid-September 2020.  (*See* Opp'n to Defs.' Short Form Disc. Mot. for In Camera Rev. of Comms. Between Peter and Lucas Hicks, Doc. No. 49 ("On September 10, 2020, the Hindenburg Report was released.  The value of the Option collapsed.  Less than a week later, Plaintiffs hired [counsel] in anticipation of the underlying suit.").)  Thus, even accepting Plaintiffs' arguments, Peter had a duty to preserve as of mid-September 2020.

[42] (Opp'n 7, Doc. No. 151.)

[43] (*Id.* at 11.)

[44] (*Id.*)

## ANALYSIS

Whether spoliation sanctions are warranted in this case turns on credibility determinations regarding the cause and impact of the loss of messages from Peter's phone. Where these issues are more appropriate for resolution by a jury, it makes sense to reserve these issues for a potential jury determination. Accordingly, the court will not make findings on these issues at this stage. At this juncture, Defendants have not shown dismissal or an adverse instruction sanction is merited. Accordingly, their motion is denied without prejudice.

First, the parties present competing evidence and testimony as to what was lost and whether any loss caused prejudice, putting these issues squarely within the jury's ambit.[45] Spoliation sanctions are appropriate only if ESI "is lost because a party failed to take reasonable steps to preserve it" and it "cannot be restored or replaced through additional discovery."[46] Relatedly, the spoliation must cause prejudice.[47] As noted above, Plaintiffs contend nothing was irretrievably lost because the text messages

---

[45] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."); *Amann v. Off. of the Utah Att'y Gen.*, No. 2:18-cv-00341, 2023 U.S. Dist. LEXIS 197427, at *23 (D. Utah Nov. 2, 2023) (unpublished) (declining to impose spoliation sanctions where the spoliation issue "is deeply fact-bound and turns on questions of the parties' motives and witness credibility");

[46] Fed. R. Civ. P. 37(e).

[47] Fed. R. Civ. P. 37(e)(1).

missing from Peter's phone were recovered through Lucas.[48]  On the other hand, Defendants argue Mr. Tucker's expert opinion and Lucas's deposition testimony show Lucas likely did not produce all relevant messages.[49]  As to prejudice, the parties' arguments again turn on competing interpretations of Mr. Tucker's expert opinion and Peter and Lucas's testimony.[50]  A determination of these disputes requires credibility determinations and weighing evidence.

Next, even assuming relevant ESI was irretrievably and prejudicially lost, the sanction of dismissal (or an adverse jury instruction) may only be imposed if Peter "acted with the intent to deprive another party of the information's use in the litigation."[51]  Defendants argue the testimony of Mr. Tucker, Peter, and Lucas establishes Peter intentionally deleted messages.[52]  But Plaintiffs contend Mr. Tucker's expert report is substantively flawed and, instead, argue Lucas and Peter's deposition testimony and affidavits prove Peter did not intentionally delete messages.[53]  In other words, the parties have submitted competing evidence as to Peter's intent—and his intent is directly at issue.

---

[48] (Opp'n 7–11, Doc. No. 151.)

[49] (Mot. 8–9, Doc. No. 135.)

[50] (*See id.*; Opp'n 7–10, Doc. No. 151.)

[51] Fed. R. Civ. P. 37(e)(2).

[52] (*See* Mot. 1–2, 6–7, 9, Doc. No. 135; Reply 1–4, 8, Doc. No. 157 (same).)

[53] (*See* Opp'n 4–5, 9–13, Doc. No. 151.)

Ultimately, whether the messages were lost irretrievably, intentionally, and prejudicially is "deeply fact-bound and turns on questions of the parties' motives and witness credibility."[54] Weighing the credibility or persuasiveness of witness testimony (including expert opinions) ordinarily falls within the province of the jury.[55] Although the court may "step into the role of factfinder" for purposes of determining a sanctions motion, it may also decline to do so where the motion is "intertwined with issues of fact and credibility that will ultimately be decided by the jury at trial."[56] In this case, a determination of whether spoliation occurred and caused prejudice requires weighing competing witness testimony from Peter, Lucas, and Mr. Tucker—the same testimony the jury must weigh in deciding the merits of this case. Under these circumstances, these issues are more appropriate for determination by the jury at trial.[57]

When considering the competing evidence and affidavits submitted, at this stage, Defendants have not established Peter intentionally deleted text messages. In other words, Defendants have not demonstrated dismissal or an adverse jury instruction is an appropriate sanction at this juncture. However, if evidence relating to spoliation is

---

[54] *Amann*, 2023 U.S. Dist. LEXIS 197427, at *23.

[55] *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862–63 (10th Cir. 2014) (unpublished).

[56] *Amann*, 2023 U.S. Dist. LEXIS 197427, at *22–23.

[57] Plaintiffs' argument that Defendants are collaterally estopped from asserting their reliance defense is beyond the scope of this spoliation motion. Similarly, whether Lucas's assertion of the Fifth Amendment gives rise to an adverse inference is more appropriately addressed in pretrial motions or at trial.

deemed admissible at trial, it may be appropriate to submit this issue to the jury. For example, the jurors could be instructed that they may consider, in their discretion, "whether they believe evidence proffered at trial might give rise to an inference that additional evidence not produced was spoliated, and whether negative implications of the parties' good or bad faith might be drawn therefrom."[58]

## CONCLUSION

Where a determination of whether spoliation occurred or sanctions are warranted turns on credibility questions and factual issues more appropriate for determination by a jury, and Defendants have not shown dismissal is appropriate at this stage, Defendants' motion for spoliation sanctions[59] is denied without prejudice.

DATED this 21st day of July, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[58] *See Amann*, 2023 U.S. Dist. LEXIS 197427, at *24 n.5; *see also* Fed. R. Civ. P. 37(e)(2)(B) (permitting the court "to instruct the jury that it may or must presume the information was unfavorable to the party" upon "finding that the party acted with intent to deprive another party of the information's use in the litigation").

[59] (Doc. No. 135.)